Filed 8/6/26  P. v. Bravo CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>JUBENAL PORRAS BRAVO,<br><br>      Defendant and Appellant. | F090202<br><br>(Super. Ct. No. SC051602A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Andrew Kendall, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench and Anna J. Benham, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

At a resentencing hearing required by Penal Code section 1172.75,[1] the trial court declined to exercise its discretion under section 1385 to strike or reduce the firearm enhancement imposed under section 12022.5, subdivision (a), and reimposed the upper term sentences on two counts stayed under section 654.  As explained herein, the People's argument that the trial court lacked jurisdiction to resentence appellant under section 1172.75, subdivision (f) (section 1172.75(f)) is foreclosed under this court's recent decision in *People v. Robinson* (2026) 120 Cal.App.5th 516, 521, review granted July 15, 2026, S297048 (*Robinson*), and we conclude that appellant forfeited his claims of sentencing errors, as he neither argued the issues nor objected to the trial court's exercise of its sentencing discretion on the ground he now advances on appeal (*People v. Fruits* (2016) 247 Cal.App.4th 188, 208 (*Fruits*)).  Finally, appellant has not carried his burden to show counsel's failure to make sentencing objections constituted ineffective assistance of counsel (IAC).

Accordingly, we affirm the judgment.

# BACKGROUND

## I.     Factual Background[2]

On August 27, 1992, appellant stopped to talk to Sonia, an acquaintance.  Sonia saw that he was driving a white truck.  Appellant asked her if she knew of a vehicle he could borrow because he was having problems with his truck.  Sonia called a friend to borrow a car, and Sonia and appellant took appellant's truck to pick up the borrowed car.  After fueling the cars, appellant traded vehicles with Sonia; she got back into her own car, and left.

---

[1]     All statutory references are to the Penal Code unless otherwise noted.

[2]     The facts of the underlying offenses are drawn from this court's opinion in appellant's direct appeal, and they are set out only for the purpose of context.  (*People v. Bravo* (Mar. 21, 1995, F019992) [nonpub. opn.].)

2.

The next day, Sonia received a call from appellant asking her to meet him. Sonia agreed and, after meeting, the two returned Sonia's car to the woman babysitting Sonia's son. Upon dropping off the car, Sonia got into the passenger seat of appellant's truck. Once in the cab, she heard the victim's voice (another man she knew) coming from the tool box in the bed of the pickup truck just behind her. Sonia asked appellant what was going on, but he said nothing.

Appellant drove to a gas station, took a gun out, and told Sonia to pay for gas and pump it. While Sonia was pumping gas, she saw appellant in the bed of the truck kneeling next to the tool box. She again heard the victim's voice, although she did not pay attention to the conversation the two men were having. Once she paid for the gas, appellant told Sonia to drive the truck, and appellant got in on the passenger side. He had the gun with him the entire time, including when he was talking to the victim in the bed of the pickup truck. Appellant instructed Sonia where to drive, and eventually they ended up on a dirt road into some orange groves. Appellant instructed her to stop the truck, and he ordered her to stay inside while pointing the gun toward her. Appellant got out of the vehicle.

Sonia felt the back of the truck move when appellant jumped in the back. She did not look through the rearview mirror; she stayed frozen. She could hear a scratch-like movement, and she heard the victim and appellant talking to each other, but she could not hear precisely what they said. She thought the two were arguing. Sonia next heard gunfire behind her. She opened the door, but appellant yelled at her to get back in the truck, which she did. Sonia heard an attempt to fire the gun three times: there was a shot the first time, but the second time the gun apparently misfired, and the third sound she heard was a second gunshot. In all, Sonia heard two gunshots in a matter of seconds.

A few minutes later, appellant sat in the passenger seat and Sonia again saw the gun. Appellant was pointing the gun at her and telling her to drive. When Sonia turned on the headlights, appellant told her to turn them off. She asked him what was going on

3.

and what appellant had done, but he told her to shut up. He told her to drive, and they got on a freeway and drove toward Los Angeles.

Appellant kept the gun in his lap as Sonia drove; they stopped at a gas station, where Sonia went inside to pay for gas. Appellant came into the store and gave her money to pay. Sonia walked back outside to the truck, and appellant pumped the gas. Sonia then kept driving south toward Los Angeles. She remembered driving past Magic Mountain and past San Fernando, but she could not remember which freeway—she merely followed appellant's instructions.

They eventually exited the freeway in an area with storage buildings and factories, but no residences nearby. Appellant exited the truck and told Sonia to stay in the truck. Sonia heard appellant jump in the back of the truck and she heard the back of the tool box hit the rear window of the truck. She felt the truck moving up and down as appellant left the bed of the truck. She did not turn around or look over her shoulder, and she did not look through the rearview mirror. She held her head down and cried, fearful that something would happen to her. She did not see the victim again after the shots, and she and appellant drove back to Bakersfield. They stopped at two different self-service car washes where appellant washed the truck. He also took some trash out of the back of the truck and threw it in a trash can. She saw blood next to the tool box.

When they arrived back at Sonia's home, appellant threatened Sonia and her family with death if she told anyone. He told her a story to tell if the police ever came to talk to her. Appellant warned her not to tell anyone else what happened. He also called her the next day and warned her not to tell anyone what happened. He stopped by her house once or twice before she eventually talked to the police.

An information filed in October 1992 by the Kern County District Attorney charged appellant with the willful, deliberate and premeditated murder of Carlos Ascencio. Attached to the murder charge was a firearm enhancement under section 12022.5, subdivision (a). A kidnapping special circumstance allegation was also

4.

attached to the murder charge, as well as an allegation appellant had served a prior prison term within the meaning of section 667.5, former subdivision (b). Appellant was charged in count 2 with Carlos Ascencio's kidnapping (§ 207, subd. (a)), plus a prior prison term enhancement (§ 667.5, former subd. (b)). Appellant was charged in count 3 with being a felon illegally in possession of a firearm (repealed § 12021, subd. (a)), plus a prior prison term enhancement (§ 667.5, former subd. (b)).

The case proceeded to a jury trial in February 1993. The jury found appellant guilty of all the offenses charged, and found true the special circumstance kidnapping allegation, and the firearm enhancement allegation. In a bifurcated proceeding, the trial court found true the allegations that appellant had served a prior prison term as to counts 1 and 2. In June 1993, appellant was sentenced to life without the possibility of parole (LWOP) on count 1, plus an additional four years for the firearm enhancement. The trial court imposed the upper term of eight years on count 2, but stayed execution under section 654. The trial court also imposed the upper term of three years on count 2, and likewise stayed execution under section 654. The judgment was affirmed in all respects on appeal.

## II.     Petition Proceedings Under Section 1172.75

Section 667.5, subdivision (b), provides for a prison prior enhancement. As originally enacted, this statute required trial courts to impose a one-year enhancement for any felony for which a prison sentence was imposed, unless the defendant had remained free of custody for at least five years after completing that sentence. (Stats. 1976, ch. 1139, § 268, pp. 5137–5139; Stats. 2011, ch. 15, § 442 [extending § 667.5, former subd. (b) to include county jail sentences of more than one year].) Effective January 1, 2020, section 667.5 was amended by Senate Bill No. 136 (2019–2020 Reg. Sess.) to limit the prior prison term enhancement to prior terms imposed only for sexually violent offenses. Enhancements based on prior prison terms served for other offenses became legally invalid. In 2021, Senate Bill No. 483 (2021–2022 Reg. Sess.) was enacted, which

5.

made the changes implemented by Senate Bill No. 136 retroactive, and added to the Penal Code former section 1171.1, which is currently section 1172.75. (Stats. 2021, ch. 728, § 3; Stats. 2022, ch. 58, § 12.)

In its present form, section 1172.75 charges the Secretary of the Department of Corrections and Rehabilitation (CDCR) with identifying prisoners serving time under judgments that included the now-invalid section 667.5, subdivision (b), enhancements, and notifying the court that pronounced judgment. (§ 1172.75, subd. (b).) Section 1172.75 requires the sentencing court to review such judgments and, if it includes a now-invalid enhancement, to recall the sentence and resentence the defendant. (*Id.*, subd. (c).) Decisional law recognizes that defendants who are eligible for relief under section 1172.75 are entitled to a full resentencing. (*People v. Monroe* (2022) 85 Cal.App.5th 393, 402 ["[b]y its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements"].) The statute mandates that resentencing pursuant to this section "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) The trial court is required to "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (d)(2).)

Pursuant to this resentencing statute, appellant was identified by the CDCR as a person potentially eligible for resentencing. Appellant was assigned counsel, and the matter proceeded to a sentencing hearing on July 11, 2025. At the sentencing hearing, the court admitted several defense exhibits in support of the defense request that the trial court strike the firearm enhancement: Exhibit No. A was a copy of appellant's security level reclassification score sheets; exhibit No. B was appellant's educational progress

6.

records; and exhibit No. C was confidential mitigation information, which included mental health records.

The court also admitted two exhibits from the prosecution: (1) a certified copy of appellant's rap sheet and (2) prison disciplinary records. The court noted the rap sheet showed that appellant served two years in prison for a violation of Health and Safety Code section 11351, and he was then on parole when his current offenses occurred. The prosecution's second exhibit included appellant's prison disciplinary records showing a battery on a correctional officer in August 2023 where appellant threw a cup of tomato juice out of his food port onto the leg and foot of a correctional officer. In considering a loss of privileges at a due process hearing, prison officials found in mitigation that appellant had serious mental-health challenges, and taking away family visiting privileges might exacerbate his mental health issues.

The trial court struck the two prior prison term enhancements, but reimposed LWOP on count 1, declined to strike the attached firearm enhancement under section 1385, and reimposed the upper term sentences on counts 2 and 3, which remained stayed under section 654. This appeal followed.

## DISCUSSION

Appellant claims the trial court abused its discretion in declining to strike the section 12022.5, subdivision (a), firearm enhancement pursuant to section 1385, subdivision (c), and appellant also claims the court erred in reimposing the upper term sentences on counts 2 and 3.

In response to appellant's claims of resentencing error under section 1172.75, the People argue the appeal must be dismissed because section 1172.75(f) (added to § 1172.75 under Sen. Bill No. 285 (2023–2024 Reg. Sess.) (Stats. 2024, ch. 979, § 2)) precludes from resentencing relief those defendants who are sentenced to death or LWOP. The People maintain this subdivision, along with the other provisions of the

7.

statute and the legislative history underlying subdivision (f), confirm the Legislature's intent to exclude LWOP defendants from resentencing under section 1172.75.

## I. The Trial Court Did Not Lack Jurisdiction to Resentence

Section 1172.75(f) provides as follows: "Commencing on January 1, 2025, an individual who has been convicted of a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code and sentenced to death or a life term without the possibility of parole, who, as of January 1, 2025, has not had their judgment reviewed and verified by the sentencing court as provided in subdivision (c), is not eligible for recall and resentencing under this section. This subdivision does not apply retroactively." (Added by Sen. Bill No. 285 (2023–2024 Reg. Sess.), eff. Jan. 1, 2025.)

The People contend section 1172.75(f)'s use of the conjunction *and* in describing the group of defendants who are to be excluded from resentencing should be understood disjunctively to mean *or*. Specifically, the People interpret the phrase *an individual who has been convicted of a sexually violent offense in subdivision (b) of section 6600 of the Welfare and Institutions Code and sentenced to death or a life term without the possibility of parole* to mean *an individual who has been convicted of a sexually violent offense in subdivision (b) of section 6600 of the Welfare and Institutions Code **or** sentenced to death or to LWOP.* In other words, the People understand section 1172.75(f) to exclude from resentencing, under the time parameters given, any defendant with a qualifying sexual offense *or* sentenced to death or LWOP. Although appellant has not been convicted of a qualifying sexual offense, the People claim he is nonetheless ineligible for resentencing under section 1172.75(f) because he is sentenced to LWOP.

In *Robinson*, this court addressed the same statutory arguments that the People advance here with respect to jurisdiction. After interpreting section 1172.75, *Robinson* held, "[S]ubdivision (f) of section 1172.75 must be construed conjunctively to exclude

8.

from resentencing only those individuals who have been convicted of a qualifying sexually violent offense *and* sentenced to death or [LWOP].” (*Robinson, supra*, 120 Cal.App.5th at p. 529, review granted.)  There is no dispute that although appellant was sentenced to LWOP in this case, he did not commit a qualifying sexually violent offense. Therefore, the trial court had jurisdiction under section 1172.75.  (*Robinson, supra*, at p. 529, review granted.)

## II.    Appellant’s Sentencing Claims Were Forfeited

It is undisputed appellant made no objection at the sentencing hearing to the aspects of the sentence he now challenges on appeal.  For the reasons that follow, we conclude each of his sentencing claims were forfeited.

### A.    Forfeiture Doctrine

“‘A party in a criminal case may not, on appeal, raise “claims involving the trial court’s failure to properly make or articulate its discretionary sentencing choices” if the party did not object to the sentence at trial.  [Citation.]  The rule applies to “cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons .…”’”  (*People v. Scott* (2015) 61 Cal.4th 363, 406.)  “Strong policy reasons support this rule:  ‘It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.  [Citations.]’  [Citation.]  ‘“‘“The law casts upon the party the duty of looking after his legal rights and of calling the judge’s attention to any infringement of them.  If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.”’”’”  (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 (*Stowell*); accord, *People v. Salazar* (2016) 63 Cal.4th 214, 239–240; *People v. French* (2008) 43 Cal.4th 36, 46.)

"'[D]iscretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.'" (*In re Sheena K.* (2007) 40 Cal.4th 875, 887–888, fn. 7 (*Sheena K.*).) Absent a substantive change in the law that applies retroactively (e.g., *People v. Salazar* (2023) 15 Cal.5th 416, 431–432; *People v. Stamps* (2020) 9 Cal.5th 685, 698–699), or an extenuating circumstance such as the futility of objecting under the then-governing substantive law (e.g., *People v. Perez* (2020) 9 Cal.5th 1, 7–8; *People v. Brooks* (2017) 3 Cal.5th 1, 92), neither of which is at issue here, the policy reasons underlying the forfeiture doctrine fully support its application where a defendant remains silent in the trial court when sentenced and then seeks to obtain appellate relief based on an asserted sentencing error that could have been raised at the time of sentencing. (*People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"]).

### B.     Firearm Enhancement

Appellant argues the trial court abused its discretion in finding that dismissal of the firearm enhancement would endanger public safety pursuant to section 1385, subdivision (c), because the court failed to consider his LWOP sentence.

### 1.     Section 1385

Section 1385 permits the trial court to dismiss an enhancement in furtherance of justice. (*Id.*, subd. (a).) As amended by Senate Bill No. 81 (2021–2022 Reg. Sess.), effective January 1, 2022, section 1385, subdivision (c)(1), provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute," and "[i]n exercising its discretion under this subdivision, the court *shall* consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the

enhancement, *unless* the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others" (*id.*, subd. (c)(2), italics added).

Section 1385, subdivision (c)(2), provides the following mitigating circumstances:

"(A)    Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

"(B)    Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C)    The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

"(D)    The current offense is connected to mental illness.

"(E)    The current offense is connected to prior victimization or childhood trauma.

"(F)    The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G)    The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H)    The enhancement is based on a prior conviction that is over five years old.

"(I)    Though a firearm was used in the current offense, it was inoperable or unloaded."

Pursuant to section 1385, subdivision (c)(5), "A court may conclude that a defendant's mental illness was connected to the offense" for purposes of subdivision (c)(2)(D) if, after reviewing all relevant materials, "the court concludes that the defendant's mental illness substantially contributed to the defendant's involvement in the commission of the offense."

11.

### 2. Analysis

In declining to strike the firearm enhancement, the court found "by clear and convincing evidence that [appellant] remains a danger to public safety. Even while medicated, complying with his medications, in a controlled environment, he still engaged in a battery. Combined with the fact the extraordinary seriousness of the underlying offense, even with 30-some years with treatment—even if you believe maybe his treatment really only became successful in 2018, [when] the involuntary medication order was lifted and he's complied with his medications. Even just taking that into account over the past seven years—just five years into that, 2023, he engaged in a battery.

"So whether it was volitional or not—and certainly I don't fault the due-process hearing for finding items in mitigation, but I think it shows that he has an inability to control his dangerous behavior. Court[] finds him to be a danger to public safety to lift the [section] 12022.5 enhancement. The request to do so is denied."

As noted, it is undisputed appellant did not object to the trial court's public safety finding in declining to dismiss the firearm enhancement under section 1385, subdivision (c).

On appeal, relying on *People v. Gonzalez* (2024) 103 Cal.App.5th 215, appellant contends the court focused on past events in assessing appellant's risk to public safety, and it failed to consider whether dismissing the enhancements would endanger future public safety given his LWOP term. (*Id.* at pp. 230–231.) In *People v. Gonzalez*, which was decided approximately a year before the resentencing hearing in this case, the defendant claimed several mitigating circumstances applied, and the Court of Appeal found "the trial court erred because it considered only whether [the defendant] *currently* posed a danger to the public when assessing if a dismissal of the firearm enhancement would 'endanger public safety.'" (*Id.* at p. 230, quoting § 1385, subd. (c)(2).) The court explained, "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would

12.

endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently dangerous defendant who will be released from prison within a short timeframe might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until he is elderly." (*People v. Gonzalez, supra*, at p. 228.)

As an initial matter, a general request for relief under section 1385 does not serve to preserve appellant's present claim that the court abused its sentencing discretion as to a finding on public safety because it failed to assess future dangerousness in light of appellant's LWOP sentence. Had appellant objected to his sentence on the ground he raises on appeal, the very error he now asserts entitles him to remand could have been corrected or the record otherwise developed as to the issue. "[A] party cannot argue on appeal that the trial court erred in failing to conduct an analysis it was not asked to conduct" (*Fruits, supra*, 247 Cal.App.4th at p. 208, fn. omitted; accord, *People v. Fuiava* (2012) 53 Cal.4th 622, 655), and strong policy reasons support application of the rule in the situation presented in this case (*Stowell, supra*, 31 Cal.4th at p. 1114). Here, the relevant amendment to section 1385 had been in effect for more than three years, and the decision in *People v. Gonzalez, supra*, 103 Cal.App.5th 215 was issued approximately a year before the resentencing hearing. Appellant neither made the argument nor objected on the ground now advanced on appeal as supporting remand for resentencing.

Appellant argues he was entitled to dismissal of the firearm enhancement as a matter of law because, due to his LWOP sentence, its dismissal will never endanger public safety. Because appellant was entitled as a matter of law to dismissal of the enhancement, the trial court's failure to dismiss the enhancement violated appellant's due process rights. Appellant maintains his challenge presents a constitutional issue that may be addressed for the first time on appeal.

We disagree that appellant has a statutory *entitlement* to dismissal of the firearm enhancement. Even if appellant were correct and dismissal of the firearm enhancement could never endanger public safety due to appellant's LWOP term, "a court retains discretion to impose or dismiss enhancements" if it determines that countervailing factors neutralize the great weight of any mitigating circumstances "'such that dismissal of the enhancement is not in furtherance of justice.'" (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.) The trial court expressly considered countervailing factors, including the extreme seriousness of the underlying offenses (special circumstances murder and kidnapping), and the fact that appellant was still having difficulty controlling his behavior despite medication in the very structured environment of prison. The trial court could properly decline to dismiss the enhancement in the interests of justice, and thus any error with respect to the public safety finding did not entitle appellant to dismissal of the enhancement or implicate his due process rights. Moreover, even constitutional claims may be forfeited if the issue is not raised below. (*Sheena K., supra*, 40 Cal.4th at pp. 880–881 ["""'a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it"'"].)

For these reasons, we find appellant forfeited review of his claim that the court erred by failing to consider appellant's LWOP sentence in assessing the danger appellant posed to public safety.

### C. Upper Term Sentences on Counts 2 and 3

Without discussing any relevant sentencing factors, the trial court reimposed the upper term sentences on counts 2 and 3 that were originally imposed; appellant did not object.

On appeal, appellant claims the trial court was obligated not to impose any upper term sentences because it had concluded, with respect to the firearm enhancement, that

the relevant mitigating and aggravating circumstances were in equipoise. The People contend this claim is forfeited for lack of any objection.

We agree with the People. Appellant's claim is predicated on the fact the trial court found the sentencing factors with respect to the firearm enhancement to be in equipoise, which appellant contends militates imposition of a middle term sentence under section 1170, subdivision (b)(2), on all counts. This is so, appellant argues, because implicit in its equipoise conclusion, the trial court found no aggravating circumstances that justified an upper term sentence.[3] An objection based on this reasoning could have been interposed during the resentencing hearing where it could have been addressed. With limited exceptions, "'an appellate court will not consider claims of error that could have been—but were not—raised in the trial court.'" (*Stowell, supra,* 31 Cal.4th at p. 1114.) This claim of error was forfeited due to lack of an objection.

## III. No IAC

Appellant argues that if the forfeiture doctrine applies due to his counsel's failure to object at the resentencing hearing regarding these purported errors, his counsel rendered constitutionally IAC.

### A. Legal Standard

To establish IAC on direct appeal, appellant "'must satisfy a two-pronged showing: that counsel's performance was deficient, and that [he] was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.'" (*People v. Woodruff* (2018) 5 Cal.5th 697, 736, quoting *People v. Alexander* (2010) 49 Cal.4th 846, 888; accord, *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

---

[3] Appellant does not frame his claim as Sixth Amendment violation, and we decline to extrapolate a Sixth Amendment argument where none has been made. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["An appellate court is not required to examine undeveloped claims, nor to make arguments for parties."], citing *People v. Gidney* (1937) 10 Cal.2d 138, 142–143.)

"'[T]he standard for judging counsel's representation is a most deferential one.' (*Harrington v. Richter* (2011) 562 U.S. 86, 105 (*Richter*).) We 'must indulge a "strong presumption" that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission was unreasonable in the harsh light of hindsight.' (*Bell v. Cone* (2002) 535 U.S. 685, 702.) 'Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.' (*Richter*, at p. 105.)" (*In re Long* (2020) 10 Cal.5th 764, 773.)

Due to this, a "defendant's burden [is] 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on [IAC] on direct appeal only if there is affirmative evidence that counsel had ""'no rational tactical purpose'"" for an action or omission." (*People v. Mickel* (2016) 2 Cal.5th 181, 198 (*Mickel*), quoting *People v. Lucas* (1995) 12 Cal.4th 415, 437.) "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (*Strickland, supra*, 466 U.S. at p. 690.) "'[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish [IAC].'" (*People v. Carrasco* (2014) 59 Cal.4th 924, 985.)

### B.    Firearm Enhancement:  No IAC

With respect to the firearm enhancement, appellant's counsel could have reasonably determined that seeking a more detailed ruling on the issue of public safety or objecting on the ground now raised on appeal would not have benefited appellant, which forecloses any claim of IAC. Even if the court had concluded, based on an objection, the public safety finding was not warranted, dismissal of the firearm enhancement was not mandated. As explained by our high court in *People v. Walker*, "[I]f the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement. *But ultimately, the court must determine*

16.

*whether dismissal is in furtherance of justice.*" (*People v. Walker, supra*, 16 Cal.5th at p. 1036, italics added.)

The trial court expressly considered countervailing factors that would weigh against dismissal in the interests of justice (§ 1385, subd. (c)(2)), including the extreme seriousness of the underlying offenses (special circumstances murder and kidnapping), and the fact that appellant was still having difficulty controlling his behavior despite medication in the very structured environment of prison. Based on the court's discussion of these countervailing factors, defense counsel may have reasonably concluded that any objection to the public safety finding would not have resulted in dismissal of the enhancement. (*People v. Thompson* (2010) 49 Cal.4th 79, 122 ["[c]ounsel is not ineffective for failing to make frivolous or futile motions"].)

For these same reasons, there is no substantial likelihood of a different result had an objection been made. (*Harrington v. Richter* (2011) 562 U.S. 86, 104, 112 ["[t]he likelihood of a different result must be substantial, not just conceivable"].)

C.      **Upper Term Sentences on Counts 2 and 3:  No IAC**

1.      **Parties' Arguments**

As we understand appellant's argument, when the trial court evaluated the mitigating and aggravating sentencing factors with respect to the firearm enhancement and concluded the respective weight of those factors was in equipoise, appellant contends there were no aggravating factors that could justify an upper term sentence under section 1170, subdivision (b)(2); anticipating application of the forfeiture doctrine for his counsel's failure to object, appellant maintains any competent attorney would have objected to the upper term sentences on counts 2 and 3 under these circumstances, as unsupported under section 1170, subdivision (b)(2).

Relying on *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*), the People argue the trial court's reimposition of upper term sentences was proper under section 1172.75, subdivision (d)(4). Thus, any objection to the upper term

sentences on counts 2 and 3 was meritless, and defense counsel's failure to object could not be prejudicial under *Strickland.*

Appellant responds that section 1172.75, subdivision (d)(4), is not relevant because by evaluating the mitigating and aggravating circumstances, the trial court implicitly indicated it was *not* reimposing upper terms based on the original sentencing court's evaluation of the sentencing factors, but was instead sentencing appellant anew on all determinate counts under section 1170, subdivision (b).

### 2.     Additional Background

At the resentencing hearing, the trial court invited defense counsel to indicate what resentencing relief appellant was seeking. Defense counsel explained "we're really talking about … setting aside the [section] 667.5[, subdivision ](b)" prior prison term enhancement and the firearm enhancement under section 12022.5, subdivision (a) for which a middle term of four years had been originally imposed. Defense counsel did not mention, nor did she seek any relief from, the upper term sentences originally imposed on counts 2 and 3.

The trial court considered the additional evidence appellant submitted at the resentencing hearing, and the court indicated it was conducting a full resentencing. The court struck the prior prison term enhancement, but it declined to strike the firearm enhancement. Turning to select the term for the firearm enhancement, the court found in mitigation that appellant had a minimal criminal history with only one conviction for drug sales, and he completed his grant of parole as to that conviction. However, appellant's performance on misdemeanor probation was unsatisfactory because he reoffended. The court concluded "the circumstances in aggravation and mitigation are equal" and determined it would "impose the mid-term." The court then imposed LWOP on count 1, plus the middle term of four years for the firearm enhancement; on count 2, for kidnapping, the court imposed an upper term sentence of eight years (§§ 207, subd. (a), 208); and on count 3, for unlawful possession of a firearm, the court imposed

18.

an upper term of three years (§§ 1170, subd. (h)(1), 12022; see former § 12021).  The sentences on counts 2 and 3 were stayed under section 654.

### 3. Analysis

In resentencing a defendant under section 1172.75, courts have grappled with the intersection of amended section 1170, subdivision (b)(2), and section 1172.75, subdivision (d)(4), as it pertains to reimposing an upper term sentence.  (See, e.g., *People v. Mathis* (2025) 111 Cal.App.5th 359, 373, review granted Aug. 13, 2025, S291628 (*Mathis*).)  Whether a court may reimpose a previously imposed upper term sentence under section 1172.75, subdivision (d)(4), where the facts underlying one or more aggravating circumstances were neither stipulated to by the defendant nor found true beyond a reasonable doubt at trial by a jury or by the judge in a court trial is an issue now pending resolution before the California Supreme Court.  (See *People v. Eaton* (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903.)

Section 1172.75, subdivision (d)(2), requires a resentencing court to "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  The determinate sentencing law applicable to counts 2 and 3 has been amended since appellant was originally sentenced.  Under amended section 1170, subdivision (b)(2), a court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.…"

However, section 1172.75 also provides that "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of

19.

imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (d)(4).)

In *Brannon-Thompson*, the defendant was resentenced under section 1172.75, and the court reimposed an upper term sentence, which the defendant argued was based on sentencing factors not found true beyond a reasonable doubt under section 1170, subdivision (b), as amended by Senate Bill No. 567 (2021–2022 Reg. Sess.). (*Brannon-Thompson, supra*, 104 Cal.App.5th at p. 458.) On appeal, the defendant's claim was deemed forfeited for failure to object, and the failure to object was not IAC because, based on the plain language of section 1172.75, subdivision (d)(4), "it is evident the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing. Section 1172.75, subdivision (d)(4), is, therefore, an exception to the general rule that the trial court must apply ameliorative changes in the law at a section 1172.75 resentencing." (*Brannon-Thompson, supra*, at pp. 466–467.)

The Court of Appeal in *People v. Gonzalez* (2024) 107 Cal.App.5th 312 (*Gonzalez*) disagreed with *Brannon-Thompson*. (*Gonzalez, supra*, at p. 330.) *Gonzalez* acknowledged that *Brannon-Thompson*'s interpretation of section 1172.75, subdivision (d)(4), was reasonable, but determined another reasonable interpretation "would simply *restrict the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term. Under such an interpretation, a defendant would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact." (*Gonzalez, supra*, at p. 329.)

*Gonzalez* reasoned that "reading an exemption into section 1172.75, subdivision (d)(4), … and thereby allowing a court to resentence a defendant to an upper

term sentence without proof beyond a reasonable doubt of aggravating factors, would run afoul of the Sixth Amendment implications identified in *Lynch*." (*Gonzalez, supra*, 107 Cal.App.5th at p. 330, citing *People v. Lynch* (2024) 16 Cal.5th 730, 768 (*Lynch*).) *Gonzalez* explained that "[u]nder the doctrine of constitutional avoidance, a statute should not be construed to violate the Constitution if any other construction is viable. (*People v. Garcia* (2017) 2 Cal.5th 792, 804.) With that in mind, the statutory interpretation for section 1172.75, subdivision (d)(4), which simply *restricts the scope of defendants eligible to receive the upper term*, allows us to read the statute in a manner that is internally consistent and avoids running afoul of the Sixth Amendment. Under such an interpretation, a defendant would be eligible for the upper term but could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact. In other words, the same requirements for imposing an upper term under section 1170, subdivision (b)(2) would apply, thus eliminating any potential conflict between the statutes. As a result, section 1172.75, subdivision (d)(2) and (4) would also not conflict, and the statutory scheme would not be construed to violate the Sixth Amendment." (*Gonzalez, supra*, at p. 330.)

Subsequently, the Court of Appeal in *Mathis* disagreed with *Gonzalez* and followed *Brannon-Thompson*. (*Mathis, supra*, 111 Cal.App.5th at pp. 372–374, review granted.) *Mathis* concluded *Brannon-Thompson*'s interpretation of section 1172.75, subdivision (d)(4), did not implicate the Sixth Amendment because the defendant's upper term sentence comported with the law then in effect. Specifically, the court reasoned, "[w]hen Mathis was sentenced, in 2017, his sentence was imposed pursuant to the version of section 1170, subdivision (b), that granted the trial court broad discretion to select any of the three applicable prison terms." (*Mathis, supra*, at p. 373, review granted.) At that time, "there was no requirement for the judge to find a particular fact to justify imposition of the upper term" (*ibid.*, citing *Lynch, supra*, 16 Cal.5th at p. 747), and "selection of an upper term … did not run afoul of the Sixth Amendment" (*Mathis,*

21.

*supra*, at p. 373, review granted, citing *Lynch, supra*, at pp. 747–748 & *Cunningham v. California* (2007) 549 U.S. 270, 294 (*Cunningham*)). "Where, as here, the trial court elects to retain an upper term sentence that complied with the Sixth Amendment when originally imposed, the court need not engage in any additional factfinding under section 1172.75, subdivision (d)(4)." (*Mathis, supra*, at pp. 373–374, review granted, citing *Brannon-Thompson, supra*, 104 Cal.App.5th at pp. 466–467.)

Here, however, we need not reach the question of whether any objection to the upper term sentences would have been meritless under section 1172.75, subdivision (d)(4), because appellant has not carried his burden of establishing there was no reasonable basis for counsel to forgo objection to the upper term sentences. (*In re Tellez* (2024) 17 Cal.5th 77, 88 [reviewing court need not address both elements of IAC claim if one is not satisfied].) This burden is heavy on direct appeal because "[t]he record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Mickel, supra*, 2 Cal.5th at p. 198.) In addition to this, a reviewing court must presume that counsel "'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment .…'" (*Burt v. Titlow* (2013) 571 U.S. 12, 22–23.)

Appellant has argued only summarily that no reasonably effective defense counsel would have failed to object to the imposition of upper term sentences on counts 2 and 3. We find that conclusory statement insufficient to establish counsel could have no reasonable basis for foregoing objection to the upper term sentences imposed on counts 2 and 3. (*Mickel, supra*, 2 Cal.5th at p. 198 [the defendant bears burden of showing counsel's performance "'"""fell below an objective standard of reasonableness … under prevailing professional norms"'"""].)

22.

Under the circumstances presented, defense counsel could have reasonably concluded that objecting to the upper term sentences on counts 2 and 3 would yield no practical benefit to appellant. It is not clear the trial court's consideration of sentencing factors relevant to the firearm enhancement was intended to apply to any other determinate-term sentences. Indeed, the trial court's failure to mention any sentencing factors in aggravation or mitigation on counts 2 and 3 signals the trial court was reimposing the upper terms on those counts under section 1172.75, subdivision (d)(4). Further, even if defense counsel believed section 1172.75, subdivision (d)(4), would not permit reimposition of upper term sentences on counts 2 and 3 without aggravating circumstances found true by a jury either because (1) *Gonzalez, supra*, 107 Cal.App.5th at pages 330–332 provided the correct interpretation of section 1172.75, subdivision (d)(4); or (2) appellant's original upper term sentences were imposed in 1993 under a version of section 1170 that was deemed constitutionally infirm under the Sixth Amendment in *Cunningham, supra*, 549 U.S. at pages 274–275 (see *Mathis, supra*, 111 Cal.App.5th at p. 373, fn. 7, review granted), counsel still could have reasonably concluded objecting would not yield a beneficial result.

Although appellant argues the aggravating and mitigating factors for counts 2 and 3 would have been the same as those considered for the firearm enhancement, the prosecution could have asserted additional aggravating circumstances with respect to counts 2 and 3 had appellant sought a reduction of those terms. As noted in the probation report prior to the original sentencing, one additional aggravating factor with respect to the kidnapping in count 2 included that appellant had threatened a witness (Cal. Rules of Court, rule 4.421(a)(6)). Moreover, as to count 3 for unlawful possession of a firearm, it could have been alleged that, under the circumstances here, appellant's unlawful possession of a firearm resulted in violent conduct that indicated a serious danger to society (*id.*, rule 4.421(b)(1)). Defense counsel could have reasoned that, given the nature of the underlying crimes, there was no reasonable doubt a jury would find true any

23.

potential additional aggravating factors.  (See *People v. Price* (1991) 1 Cal.4th 324, 387 ["[c]ounsel does not render [IAC] by failing to make motions or objections that counsel reasonably determines would be futile"].)

Moreover, even if defense counsel were successful in obtaining a middle term sentence on counts 2 and 3—an unlikely prospect—counsel could have reasonably concluded it would result in no appreciable benefit to her client.  Execution of the sentences imposed on counts 2 and 3 was stayed under section 654.  As appellant had already served 32 years of the LWOP sentence at the time of resentencing, even if the LWOP term were invalidated at some future time, any stayed terms that became operative would long have been fully served, regardless of whether they were upper or middle terms.

In sum, the record shows defense counsel was focused solely on dismissal of the firearm enhancement, which was *not* a stayed sentence—counsel did not seek midterm sentences on counts 2 and 3.  Counsel may have concluded that focusing on the firearm enhancement would be of the most benefit to appellant, which was inherently tactical and rational.  (*Mickel, supra,* 2 Cal.5th at p. 198.)  After the trial court weighed the sentencing factors as to the firearm enhancement, counsel could have reasonably determined there were additional potential aggravating factors relevant to counts 2 and 3 that likely would have been pursued by the prosecution and ultimately found true by a jury.  Counsel also could have reasonably concluded that pursuing a middle term sentence on counts 2 and 3 could not result in any appreciable benefit to appellant, either in terms of the length of sentence or terms of confinement, and thus pursuing an objection to the upper term sentences would have been futile.  For these reasons, we are unable to conclude appellant has carried his burden to show counsel could have had no rational tactical basis to forgo an objection, which is fatal to appellant's IAC claim.  (*Id.* at p. 200.)

24.

**DISPOSITION**

The judgment is affirmed.

MEEHAN, J.

WE CONCUR:

DETJEN, Acting P. J.

SNAUFFER, J.